In this suit, at the outset, plaintiff sought a judgment against the defendant in the sum of $467.97, as a balance due it on running open accounts. According to the statement of account annexed to the petition, the charges seem to be composed mainly of cash advances, oil and gasoline furnished the defendant, while the credits are composed mainly of purchases of strawberry crates from the defendant, between the dates of February 16, 1938, to March 25, 1942, both inclusive, the charges amounting to $26,501.18 and the credits amounting to $26,033.21, thus leaving the balance of $467.97 claimed.
The defendant, for answer, admits that there have been running accounts between the two, but denies any liability to the plaintiff, for the reason that in the statement of account the plaintiff has erroneously charged the defendant with a 2¢ per crate allowance on 53,177 crates purchased by the plaintiff from the defendant. The defendant concedes that plaintiff is entitled to a credit of 2¢ per crate on 30,000 crates and no more, and which credit or allowance has been granted, thus making an over-allowance of $463.54 claimed by the plaintiff.
On the trial of the case, the issue was narrowed down to the question of whether or not plaintiff was entitled to a rebate of 2¢ a crate on 23,177 crates purchased by the plaintiff from defendant in 1939, or the sum of $463.54. The trial of the case resulted in a judgment in favor of plaintiff and against the defendant in the sum of $463.54. Defendant has appealed.
The question thus presented is a question of fact only, that is, whether or not plaintiff is entitled to a rebate of 2¢ a crate on all of the crates purchased by it from the defendant exceeding 30,000 crates or on 23,177, during the year 1939. The trial judge resolved that fact in favor of the plaintiff, and we are to affirm the judgment unless we can find manifest error in his conclusion.
It appears that plaintiff, a corporation of which Mr. Leon Edwards is the manager and vice president, is engaged in the oil and gas business and the furnishing of strawberry crates to farmers in its neighborhood. The defendant, of which Mr. H.J. Wilson is president and Mr. Allen Cross is a salesman, is engaged in the manufacture of strawberry crates.
Mr. Edwards testified that before the beginning of the 1939 strawberry season, he was contacted by Mr. Cross for the purpose of selling to him strawberry crates; later on, he met Mr. Wilson and Mr. Cross in the defendant's office, where they entered into a verbal agreement wherein plaintiff was to purchase 30,000 crates at the market price then prevailing, which prevailing price was 20¢ per crate, the plaintiff to give its trade acceptance for the amount due, and on which price plaintiff was to be credited 2¢ per crate. This was fully complied with by both parties. Later in the season, plaintiff desired to purchase additional crates. He contacted Mr. Cross, and it was agreed that the original contract of 2¢ a crate discount would govern the future purchases by plaintiff. Accordingly 23,177 crates were so purchased. During the season, at about midway, the price of the crates fell to 18¢. After the season, Mr. Wilson questioned him about a settlement. He was willing to settle in accordance with the agreement, but Mr. Wilson refused. However, Mr. Cross promised to adjust the matter. He is certain that it was the understanding with Mr. Cross that the former agreement of a discount of 2¢ per crate covered all purchases during the season of 1939.
Mr. Nick Cefalu, a strawberry dealer, testified that in the beginning of the strawberry season the price of crates was 20¢ each, but on or about April 4, the price dropped to 18¢. To the same effect *Page 55 
is the testimony of Mr. E.W. Vingard, a crate manufacturer.
Mr. S. Yawn, plaintiff's bookkeeper, testified that he was present when Mr. Cross, salesman of defendant, was in plaintiff's office, and in a conversation with Mr. Edwards, Mr. Cross stated that the price would be adjusted, inferring that the price and discount would control.
Mr. Cross, defendant's salesman, testified that he obtained a blanket order for crates from the plaintiff and that before the season started, he called on Mr. Edwards and obtained his consent to ship him 30,000 crates from Hazlehurst, Miss., at the regular price of 20¢, allowing him a discount of 2¢ per crate, which was agreed to and fully complied with by both parties. The remaining crates, that is, 23,177, shipped or sold to plaintiff came from Mississippi and from the local warehouse at Hammond. There was no agreement relative to these in so far as a discount was concerned. When a settlement was sought on these, Mr. Edwards claimed an adjustment of 2¢ a crate, contending that he, Edwards, could have purchased the crates at 19¢. Witness offered to split the difference. He states "He (Edwards) would never agree to accept it and we never would agree to give him the full amount". Witness admits that he told Mr. Edwards on a number of occasions that he would like to make an adjustment, but never more than an allowance of 1¢ a crate.
Mr. Sudie DePaula, witness for defendant, testified that he purchased some 90,000 crates from defendant, and for which he paid 18¢ for the first 30,000 and 20¢ for the other 60,000. He dealt only with defendant for that season.
Plaintiff filed excerpts of account of sales by defendant to N. Cefalu Co., Inc., wherein it is shown that the price of crates in the beginning of 1939 to April, 1939, was 20¢ per crate and for the month of April, 1939, the price was 18¢ per crate.
As can be readily seen, the evidence is contradictory as to whether the agreement was that plaintiff was to be allowed a discount of 2¢ a crate on all crates purchased by it during the season of 1939. Plaintiff's evidence is corroborated by Mr. Cross' testimony that a blanket order for crates was given by the plaintiff; however, he attempts to limit the discount to the first 30,000 crates. It is not shown that 30,000 crates were shipped in one lot, making it a separate sale. To the contrary, the crates seemed to have been shipped and received in uneven lots. The evidence is not so clear that all of the crates came from Hazlehurst, Mississippi. From Mr. Cross' testimony, we gather, after more than 30,000 crates had been delivered, some of the remaining crates came from defendant's warehouse and some from Hazlehurst.
Suffice it to say that this case presents purely a question of fact and the evaluation of contradictory testimony. The lower court was in much better position than we are to say which of the two is to be believed, Mr. Edwards or Mr. Cross. Evidently the trial judge believed the testimony of Mr. Edwards and plaintiff's other offerings. We cannot find any manifest error committed by him. In fact, the defendant, in its brief, does not set forth wherein the trial judge committed any error but contends and argues that we should believe his witness rather than those of plaintiff. This, we cannot do, as we find no reasons to disagree with the trial judge.
For these reasons, the judgment appealed from is affirmed.